FILED
DEC - 9 2008
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CRS-05-168 JCC |
| Plaintiff, | |
| v. | ORDER RE: FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S SUPERVISED RELEASE VIOLATIONS |
| JOHN MARVIN BALLARD, | Date: December 9, 2008 |
| Defendant. | Time: 8:30 a.m. |
| | Court: Hon. John C. Coughenour |

During May 5-7, 2008, the Court conducted a stipulated combined evidentiary hearing on the petition to revoke defendant John Marvin Ballard's supervised release in Case No. CRS-05-168 JCC and the criminal trial against Ballard based on the Superseding Indictment in Case No. CRS-06-283 JCC. The parties agreed that, to the extent that Charges Two, Four, and Five of the petition to revoke Ballard's supervised release overlap with the criminal charges in the Superseding Indictment, the evidence presented at the trial can be considered by the Court in weighing the merits of the petition. The parties agreed that that the Court should conduct an additional evidentiary hearing after the trial to allow the parties to put on additional evidence

1

concerning allegations in the petition that are outside the scope of the trial.

On December 9, 2008, the Court conducted the additional evidentiary hearing. The Court has reviewed the briefing submitted by the parties, and heard argument of the parties.

Based on the foregoing and good cause appearing therefrom, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Senior Probation Officer Lori Koehnen is the probation officer designated as the sex offender specialist for the probation office in the Eastern District of California. She is familiar with the methods and practices of child sex crimes offenders based on her extensive training and experience.

2. Koehnen was assigned to supervise Ballard upon his release from the Federal Correctional Institution in Ashland, Kentucky, on May 26, 2006, after completing his fifteen-month sentence on his 2005 conviction for making a false statement to another probation officer.

3. Ballard has a long criminal history of ~~actual~~ and attempted child sexual exploitation, including a federal felony conviction in 1987 for transportation of a visual image of a minor engaged in sexually explicit conduct, and a federal felony conviction for traveling in interstate commerce in 1998 to have sex with a minor. Ballard also committed two previous supervised release violations in 2003 based on: (1) his attempted association with a convicted child molester for the purpose of facilitating Ballard's access to children for sexual purposes;

1

and (2) his use of a computer in violation of the terms of his supervised release to view images of young girls.

4.  Upon his release from FCI Ashland, Kentucky, to Sacramento on May 26, 2006, the Friday before the Memorial Day Holiday, Ballard had no place to stay and no funds to pay for lodging or food. With Ballard's express written consent, Koehnen arranged for lodging and food for Ballard at the Parole Transitional Living Center.

5.  The PTLC is not a punishment facility. The PTLC is a privately-run residential facility located a few blocks from 2700 Broadway that contracts with the state and federal governments to house homeless convicted offenders, including sex offenders.

6.  On May 26, 2006, Officer Koehnen advised Ballard of the conditions of his supervised release. Ballard was sufficiently composed, attentive, and alert when he acknowledged in writing that he understood the conditions of his supervised release.

7.  Standard Condition of Supervision No. 2 imposed by the Court obligates Ballard to "report to the probation officer", while Standard Condition of Supervision No. 3 requires Ballard to "answer truthfully all inquiries of the probation officer and follow the instructions of the probation officer." Together with the authority given to probation officers under 18 U.S.C. § 3603 to carry out their duties, these conditions authorize Koehnen to "use all suitable methods" to be kept informed of Ballard's conduct and condition, and aid Ballard in bringing about improvements in his conduct and condition.

8.  Consistent with Standard Condition Nos. 2 and 3, and her authority under § 3603, Koehnen instructed Ballard that he

2

would be required to plan his weekly activities one week ahead of time, maintain a journal of those activities (date, time, and activity at each location visited) and that he would be speaking to his probation officer on a daily basis.  He agreed to these instructions and did not question the reason for the instructions.

9.   Ballard voluntarily agreed to abide by the rules applicable to all PTLC residents, including the curfew rules set forth by PTLC and his parole officer.  Ballard did not object at the time to any curfew or restrictions placed on his movement by the PTLC and/or his probation officer.

10.  During Ballard's approximate one week stay at the PTLC, Koehnen granted all of his requests for visits outside of the PTLC.

11.  On May 26, 2006, Ballard requested permission from Officer Koehnen to attend church mass on Sunday, May 28, 2006. As witnessed by PTLC owner, George Bernard, Koehnen agreed to allow Ballard to attend mass, but instructed Ballard to go to mass and return directly to the PTLC, with no additional stops anywhere.

12.  On May 28, 2008, after Ballard had gone to mass, Mr. Bernard witnessed Ballard visit McDonald's Restaurant, at 2331 Broadway, Sacramento, to purchase food and thereby violate his curfew.  The McDonald's Restaurant store surveillance video recording for that day confirms that Ballard was at McDonald's Restaurant.

13.  Probation Officer John Poglinco assisted Officer Koehnen in supervising Ballard on several occasions.  On May 31,

3

2006, Ballard provided to Poglinco his daily journal which included the entry that Ballard visited the library on May 30, 2006, to reserve the book Plum Island by Nelson Demille, but omitted the fact that he checked out the book Harmful to Minors: The Perils Of Protecting Children From Sex by Judith Levine.

14. According to Sacramento Public Library Technology Manager Gerry Calderon, Ballard checked out the book, Harmful to Minors: The Perils Of Protecting Children From Sex by Judith Levine on May 30, 2006, from the Sacramento Public Central Library. On May 30, 2006, the Central Library had on its shelf and available for checkout the book Plum Island by Nelson DeMille. According to Calderon, no one, including Ballard, checked out Plum Island on May 30, 2006.

15. Ballard's statement in his daily journal that he visited the library on May 30, 2006, to reserve the book Plum Island is false as Plum Island was available for check out on May 30, 2006, but Ballard did not check out the book. Where a book is available for check out, there is no reason or need to reserve the book as claimed by Ballard in his daily journal.

16. Officer Koehnen read the book, Harmful to Minors: The Perils Of Protecting Children From Sex and determined that it advocates allowing children to learn about and engage in sex, including sex with adults. Koehnen believes that it would be detrimental for Ballard to read the book as it helps him rationalize his view that young girls are legitimate sex objects. In Koehnen's opinion, ~~a longtime child molester, such as~~ Ballard, should not be reading such a book as it provides encouragement for the sex offender to engage in such criminal activity. In



4

addition, Koehnen would have wanted to know that Ballard was reading such a book to help assess Ballard's susceptibility to treatment and/or re-offending.

17. On June 1, 2006, Ballard requested permission from Officer Koehnen to go from the PTLC to the Primary Care health clinic in Sacramento. Officer Koehnen approved of Ballard's request, but instructed him to go directly to Primary Care, which is approximately two miles east of the PTLC, and back to the PTLC with an authorized lunch stop at the nearest fast food restaurant to Primary Care.

18. On June 1, 2006, Officer Koehnen went to Primary Care at 4600 Broadway to check whether Ballard had reported there as she directed him. Initially, she could not find Ballard at Primary Care. Later in the afternoon at Primary Care, she found Ballard in possession of a Tower Books store bag containing a Sacramento Public Library book, <u>Harmful to Minors - The Perils of Protecting Children From Sex</u>, and a <u>Vogue Bambini</u> magazine in the Italian/English languages containing photographs of young children modeling fashion clothing and swimwear. The library book and the receipt that Koehnen confiscated from Ballard indicated that he checked out the book from the library on May 30, 2006.

19. Koehnen and Poglinco then visited the Tower Book store located at 1600 Broadway, which is about one mile <u>west</u> of the PTLC. At the Tower Book store, the officers learned that Ballard was at the store on June 1, 2006, from approximately 12:27-12:39 p.m., where he purchased a <u>Vogue Bambini</u> magazine. Ballard's magazine purchase was captured on the store's videotape

5

surveillance system. According to Joe Arch, a Tower Books store security staff member, the clock for the store video recording equipment was approximately one hour behind or late as the video recorder clock had not been reset after the change in time to Daylight Savings Time in April 2006. Store clerk Amanda Sambrano confirmed that Ballard purchased the magazine on June 1, 2006, at approximately the time stated.

20. On June 1, 2006, Ballard presented his daily journal to Officer Koehnen. Ballard falsely reported in his daily journal that on June 1, 2006, he caught the bus at 9:40 a.m. from the PTLC, arrived at Primary Care located at Broadway and Stockton Boulevard at 10:00 a.m., left Primary Care at 4:40 p.m., and returned to the PTLC by bus at 5:25 p.m. In fact, Ballard was at the Tower Book store at 16th Street and Broadway from approximately 12:27-12:39 p.m. purchasing a <u>Vogue Bambini</u> magazine from store clerk Amanda Sambrano.

21. Ballard did not mention to Officer Koehnen or write in his journal entry for June 1, 2006, that he stopped at the Tower Books Store, 1600 Broadway, Sacramento, where he purchased the <u>Vogue Bambini</u> magazine. Ballard's visit to Tower Books was an unauthorized deviation from his trip to Primary Care.

22. Koehnen views Ballard as a high risk pedophile, who poses an extreme danger to children in the community. Ballard believes that he does not need help as child molestation is not harmful to children, if done in a consensual manner.

23. Had Ballard, a longtime child molester, accurately disclosed in his daily journal that: (1) he visited the library to obtain a book that advocated allowing children to engage in

6

sex; and (2) he visited the Tower Bookstore to purchase a magazine featuring photographs of young females in fashion clothing, Koehnen would have warned and counseled him that he was treading on dangerous ground. Koehnen would have designed a program for Ballard to insulate him from activities that would titillate his compulsion for sex with young girls.

## CONCLUSIONS OF LAW

1. Ballard violated Standard Condition of Supervision No. 3, which requires Ballard to "answer truthfully all inquiries of the probation officer and follow the instructions of the probation officer", by failing to follow Officer Koehnen's instruction to Ballard to go directly from the PTLC to church mass on May 28, 2006, and return without stopping anywhere. Ballard's violation is material because McDonald's Restaurant has a children's play area on the premises that would facilitate Ballard's access to children while he was at the restaurant. Officer Koehnen would not have wanted Ballard to visit such an area that might increase his risk of re-offending.

2. Ballard violated Standard Condition of Supervision No. 3, which requires Ballard to "answer truthfully all inquiries of the probation officer and follow the instructions of the probation officer", by failing to follow Officer Koehnen's instruction to go directly to Primary Care and back to the PTLC with an authorized lunch stop at the nearest fast food restaurant to Primary Care. Ballard failed to follow Officer Koehnen's instructions, in that at approximately 12:27 p.m., he went to Tower Bookstore located at 1600 Broadway in Sacramento, which is in the opposite direction of Primary Care. Ballard's violation

of Koehnen's instruction is material because, at Tower Books, Ballard purchased at approximately 12:38 p.m. a <u>Vogue Bambini</u> magazine of children modeling fashion clothing and swimwear. According to Koehnen, a person of Ballard's background of sex crimes against children should not be viewing such a magazine, ~~which only stokes a child molester's appetite for re-offending.~~ 

    3.  On May 30, 2006, Ballard provided his daily journal to Officer Koehnen knowing that the journal contained a false material statement of his activities on May 28, 2006. Specifically, Ballard knew that the journal falsely reported that he went from the PTLC to church mass and returned to the PTLC, when, in fact, he stopped at the McDonald's restaurant on Broadway after mass and before returning to the PTLC. Ballard's false journal entry is material and in violation of § 1001(a)(3) and Standard Condition Number 3, requiring him to be truthful with the probation officer. In particular, Ballard's false journal entry violates his supervised release conditions because Officer Koehnen would have wanted to know that Ballard visited a restaurant with a children's playground so that she could modify the manner in which she supervised Ballard and/or counsel Ballard to stay away from such places that might lead Ballard to re-offend.

    4.  On May 31, 2006, Ballard presented his daily journal to Probation Officer Poglinco knowing that the journal contained a false material statement of his activities on May 30, 2006. In particular, the journal reported that he visited the Sacramento Public Library to order a book titled <u>Plum Island</u>, when, in fact, he knew he had visited the library for the purpose of

checking out a book titled <u>Harmful to Minors-The Perils of Protecting Children From Sex</u> and that he did not reserve the book <u>Plum Island</u>. Ballard's false statement is material and in violation of § 1001(a)(3) and Standard Condition Number 3, requiring him to be truthful with the probation officer, because Koehnen would have wanted to know if Ballard was reading literature that advocated sex with children. Such information was important for the probation officer to know in assessing Ballad's susceptibility to treatment and/or re-offending.

    5. On June 1, 2006, Ballard presented his daily journal to Officer Koehnen knowing that the journal contained a false material statement of his activities on the same day. Specifically, Ballard reported in his daily journal on June 1, 2006, he caught the bus at 9:40 a.m. from the PTLC, arrived at Primary Care located at Broadway and Stockton Boulevard at 10:00 a.m., left Primary Care at 4:40 p.m., and returned to the PTLC by bus at 5:25 p.m. In fact, Ballard was at the Tower Book store at 16th Street and Broadway from approximately 12:27-12:39 p.m. purchasing a <u>Vogue Bambini</u> magazine from store clerk Amanda Sambrano. Ballard's false journal entry is material and in violation of § 1001(a)(3) and Standard Condition Number 3, requiring him to be truthful with the probation officer. Koehnen would have wanted to know if Ballard was viewing magazines featuring young minor females to help assess Ballard's susceptibility to treatment and/or re-offending.

DATED: Dec. 9, 2008

JOHN C. COUGHENOUR
United States District Judge